# WEINTRAUB v. HEWITT.

PATENTS; INTERFERENCE; CONCURRENT DECISIONS; CLAIMS AND SPECIFICA-
TIONS; CONCEPTION; DISSOLUTION OF INTERFERENCE; EVIDENCE.

1. Where the three tribunals of the Patent Office have concurred in an interference case, in which the question is whether the application of one of the parties discloses a certain operation of his apparatus, this court will not disturb their conclusion unless manifest error can be shown therein (following *Podlesak* v. *McInnerney,* 26 App. D. C. 399, and *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464), especially where the question is one relating to the operation of a complicated apparatus involving the application of scientific principles, about which learned and highly skilled electricians differ.

2. Where in an interference involving the invention of an improvement in gas or vapor apparatus, the single question was whether the senior parties had the right to make the claims of the issue under the disclosures of their application, and it appeared that the junior party, who had the burden of proof, introduced but one witness, an expert in the office of his assignee, whose experiments were naturally directed mainly to an effort to demonstrate the inoperativeness of the senior parties' apparatus in a way necessary to bring it within the issue, a decision of the Commissioner of Patents awarding priority to the senior parties was *affirmed.*

3. Where in an interference in which joint applicants for a patent, the senior parties would have been entitled to a judgment on the record, as the junior party stated a later date of conception than their filing date, but for a motion by the junior party to dissolve, and he obtained leave to take, and did take, testimony to show that the senior parties had no right to make certain claims of the issue, it was *held* that evidence offered by the junior party to show that the

senior parties were not joint inventors was not admissible, not being pertinent to the issue raised in the proceeding. (Distinguishing *Lemp* v. *Randall*, 33 App. D. C. 430.)

No. 720. Patent Appeals. Submitted November 14, 1911. Decided January 2, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.               *Affirmed.*

The facts are stated in the opinion.

*Mr. Albert G. Davis, Mr. W. K. Richardson,* and *Mr. Alexander D. Lunt* for the appellant.

*Mr. Charles A. Terry* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case involving priority in the matter of the invention of an improvement in gas, or vapor electric lighting apparatus.

Peter C. Hewitt and Nelson W. Rogers filed their joint application March 23, 1901. Ezechiel Weintraub's application was filed February 26, 1902.

The issue contains twenty-five counts, of which it is sufficient to set out numbers 1, 23 and 24, as follows:

"1. In a gas or vapor apparatus, the combination of two working electrodes, a starting electrode, and means for connecting the starting electrode with and disconnecting it from, one only of the working electrodes.

"23. The combination of an exhausted envelope electrodes therefor, one at least of which is of vaporizable material, a source of current connected to said electrodes, and means for starting a flow of current from said source between said elec-

trodes by first causing an independently existing arc to spring from said vaporizable electrode.

"24. The combination of an exhausted envelope, electrodes therefor one at least of which is adapted to emit vapor, means for impressing electro-motive forces on said electrodes, and means for starting an arc between one pair of said electrodes including said vapor-emitting electrode, thereby starting an arc between said vapor-emitting electrode and another of said electrodes."

Some of the twenty-five counts were taken from the claims in the Hewitt & Rogers application; others from the claims of Weintraub's application.

The preliminary statement of Weintraub failing to overcome the filing date of his opponents, an order was made to him to show cause why decision of priority should not be entered against him. We do not find in the record the response of Weintraub to this order, or his motions to dissolve and to take testimony, but find their substance recited in the several decisions thereon. It appears therefrom that he moved to dissolve on the grounds of no interference in fact, and for nonpatentability of certain of the counts. The Primary Examiner denied the motion to dissolve, but held certain counts to be unpatentable. On appeal to the Commissioner, the decision that there was an interference in fact was affirmed. Weintraub then sought to take testimony to show that the construction and operation of the two devices were not the same. This was denied on the ground that it could be used only as a basis for dissolving the interference (which had been denied), and not on the question of priority. He then moved for leave to take testimony to show that Hewitt & Rogers have no right to make claims corresponding to counts 23 and 24 of the issue. This was granted. The decisions of the Examiner of Interference on these motions were affirmed by the Commissioner on January 11, 1907. Under this leave Weintraub took the deposition of one witness, Professor Steinmetz, who is employed by the General Electric Company, the assignee of Weintraub. His opponents took the

depositions of Percy H. Thomas, an expert in the employ of their assignee, the Cooper Hewitt Electric Company.

Hewitt was an earlier inventor of lamps of this general character, as shown by patents issued to him. In such apparatus there is a high initial resistance, which, once overcome, the flow of current can be maintained by the ordinary commercial potentials. These earlier lamps were first started by means of a high potential discharge ordinarily obtained from a static machine. Later, Hewitt employed a self-induction coil to produce the necessary high potential for starting the lamp. One of his patents shows a system in which an induction coil is connected in shunt to the lamp, there being a switch in circuit with the inductance. Before starting the lamp, the switch is closed and current flows through the inductance. The sudden opening of the circuit through the inductance generates an impulse of highly electro-motive force which break down the resistance and initiates the flow of the current of ordinary working voltage. Both parties agree that there is a difficulty in overcoming the initial resistance of the cathode, after which the ordinary working current is sufficient. Hewitt & Rogers refer to this difficulty as negative electrode reluctance, and their theory is that the surface of the mercury presents a barrier which must be pierced or overcome before the flow of current can be established. Weintraub's theory is that there must be ionized mercury vapor, furnished by the negative electrode under excitement, which creates the vehicle for the transfer of the current. Whichever theory be the correct one, it is substantially agreed that when there is a current passing between the negative electrode and an anode, a current may be secured between it and another anode at ordinary working voltage, without having recourse to the extra high voltage heretofore employed for starting. The operation of the invention of the issue consists in starting the arc between the negative electrode or cathode and the working anode. There is no question but that Weintraub has the right to make the claims of the issue. In his lamp the supplementary anode is of mercury, like the cathode. By mechanical means, or by tilting the lamp, the

pools of mercury constituting the cathode and supplementary anode are temporarily joined, and as they recede from each other the arc is created.  The ordinary working current then creates and maintains the arc between the working, or main anode and cathode.  Weintraub does not deny the operativeness of the Hewitt & Rogers apparatus, but contends that it will not operate as required by the terms of the issue, which operation is starting the arc between the supplemental anode and the cathode as a preliminary to starting the arc between the working or main anode and the cathode.  His contention is that the apparatus of Hewitt & Rogers, as described in their application, is but a modification of the apparatus of Hewitt's former patent, and that it operates in the same way, namely, by means of a high potential discharge produced by an inductance in the positive lead upon breaking, or opening the switch in the shunt circuit.  The lamp shown in figure 1 of Hewitt & Roger's application consists of a U-shaped glass tube, having at the end of one of its branches a pocket containing mercury.  The working anode is at the other end of the tube.  Within the end of the tube containing the mercury pool is pivoted a metallic conductor capable of dropping into the pool of mercury, thereby forming the connection with the cathode.  The working anode is connected through an inductance with one of the conductors supplying current, and the cathode is connected directly with the other supply conductor.  The usual switch is in the conductors.  Hewitt & Rogers say that when the switch is closed in the current leads, the voltage is not sufficient to overcome the resistance of the path between the working anode and the cathode, but they contend that the shunt forms a path for the current which flows through the coil of the solenoid shown in the drawing, and that this attracts the swinging electrode, or supplementary anode, causing it to recede slowly from the cathode, thereby establishing an arc between the two and reducing the resistance in the path between the working anode and the cathode to such an extent that the voltage of the circuit is sufficient to establish the flow of current between the two.  They do not deny that their description contemplates an impulse due to

increased voltage, but they contend that this is obtained not by breaking the current flowing between the supplementary anode and the cathode, and destroying the arc, but to the generation of an impulse in the induction coil when the flow of current is suddenly reduced by the drawing of the arc between the supplemental anode and the cathode. They contend that the current still flows, maintaining the arc between the supplementary anode and the cathode, and overcoming a portion of the reluctance of the latter, and that then the impulse due to the induction coil assists in establishing the desired arc between the main anode and the cathode. In their application they say that this reactive device may be made small, or even dispensed with in some instances.

As stated by the appellant, the single question presented is whether this operation of the appellees' apparatus, which is the invention of the issue, is disclosed in their application. His proposition is that a fair reading of that application (especially as it would appear to anyone who had no knowledge of the Weintraub invention) does not afford a clear disclosure, or any disclosure at all, of the mode of the operation in controversy. The Primary Examiner held that it does, and his view was affirmed in succession by each of the tribunals of the office before whom it came in due course of procedure. The question was ably argued before them on behalf of the appellant, as it has been on this appeal. Each tribunal delivered an elaborate opinion, in which the description of the application is analyzed and the evidence of the experts reviewed.

Where the three tribunals of the office have concurred in their decision of a question of this kind, it is the settled rule of this court not to disturb their conclusion unless manifest error can be found therein. *Podlesak* v. *McInnerney,* 26 App. D. C. 399–405; *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464. And especially is this the case where the question is one relating to the operation of complicated apparatus, involving the application of scientific principles about which learned and highly skilled electricians differ. It is true that the language of the Hewitt & Rogers application is vague,

and in some respects conflicting in respect of a matter that might have been clearly shown. Notwithstanding this prejudicial circumstance, we have not been convinced that the Patent Office tribunals committed error in holding that Hewitt & Rogers were entitled to make the controverted claims. Appellant, who had the burden of supporting his contention, contented himself with the introduction of one witness, an expert in the office of his assignee. While we are not to be understood as reflecting in the slightest degree upon this eminent expert, we cannot overlook the fact that his experiments were naturally directed mainly to an effort to demonstrate the inoperativeness of the apparatus in the way necessary to bring it within the issue. There seems to be no doubt that the temporary high potential, necessary to start the arc between the working anode and the cathode, could be obtained by means of the inductance coil through the increased resistance caused by withdrawing the supplemental anode from contact with the cathode, but still maintaining the arc. If this starting arc was not intended to be maintained for the purpose of aiding in overcoming the resistance of reluctance of the cathode, so as to permit the flow of current between it and the working anode, it is difficult to perceive for what practical purpose the supplemental anode was introduced. If, as contended by the appellant, the circuit was broken between the supplemental anode and the cathode, before the arc could be started between the latter and the main anode, the supplemental anode, instead of becoming an auxiliary, would be practically useless. The high potential then necessary to starting the arc between the main or working anode and the cathode would apparently have to be obtained by the old method; and the new lamp would be no substantial improvement upon the old one.

The application of the appellees has been so fully and carefully examined in the decisions of the several tribunals, set out in the record, that it would serve no useful purpose to consume time with an additional review.

One other question remains to be considered. Weintraub filed in evidence a deposition of one Lunt and copies of depo-

sitions of Hewitt and Rogers taken in another interference. The avowed purpose of this evidence was to show that Hewitt & Rogers were not joint inventors. On motion of appellees, the evidence was stricken out. A motion to set this order aside was subsequently made and overruled. On the final hearing the testimony was again offered and excluded, on the ground that the evidence in the case was limited by the motion of Weintraub to take evidence on the single question of the right of the appellees to make the claims in question under the disclosures of their application.

There was no error, we think, in the exclusion of the evidence. A prima facie case of joint invention was made by the allowed application. Weintraub's statement of his conception of the invention giving a date later than the filing date of his opponents, they were not required to take any testimony in support of their claim, but were entitled to a judgment on the record, unless it could be shown, as contended by Weintraub, that they were not entitled to make the claims, because there was nothing in their application furnishing a basis therefor. This being the sole issue presented, Weintraub applied for and obtained leave to take evidence thereon. The additional evidence sought to be introduced was not pertinent to this, the sole issue in the case. The case of *Lemp* v. *Randall*, 33 App. D. C. 430–432, relied on by the appellant, is not in point. All that was decided in that case was that, on an issue requiring proof of conception of the invention, evidence was admissible to show that one only of the joint applicants was the actual inventor. Having made an application alleging that they were joint inventors, they tendered that as one of the issues of the case. The case was distinguished from those where it had been held that evidence could not be offered to show that a third person, not a party to the proceeding, was the first to invent. The court said: "Appellant did not seek to show that the right to the award of priority was in a third party, an alien to the proceeding, but that the senior parties to the proceeding were without standing, because it appeared that they were not

joint inventors, and hence not entitled to make the application in interference."

We find no error in the decision appealed from, and it is affirmed, with direction to certify this decision to the Commissioner of Patents. *Affirmed.*